UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DONALD CREECH, | Case No. 1:12-cv-161 |
|       Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
|       Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Donald Creech filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for Disability Insurance Benefits (DIB) in October 2006 and an application for Supplemental Security Income in January 2009 alleging a disability onset date of November 15, 2004, due to physical and mental impairments. (Tr. 60-62, 69, 523).[1] After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing, at which Plaintiff was represented by counsel, was held

---

[1] Plaintiff later amended his alleged onset date to April 2008 (Tr. 607).

on June 2009.  (Tr. 713-51).  In September 2009, ALJ Roger Reynolds denied Plaintiff's application in a written decision.  (Tr. 520-530).

In August 2010, the Appeals Council vacated ALJ Rogers's decision, and remanded the matter to an ALJ for resolution of multiple issues, including providing an evaluation of the July 2009 assessment from consulting physician Alekh Gupta, M.D. (Tr. 532-35, citing Tr. 508-19).  Upon remand, ALJ Deborah Smith held a second hearing on Plaintiff's claims in January 2011.  (Tr. 666-712).  Plaintiff and a vocational expert testified, with Plaintiff's counsel in attendance.  (Tr. 666-712).  ALJ Smith denied Plaintiff's applications in a written decision in February 2011.  (Tr. 13-27).

The record on which the ALJ's decision was based reflects that Plaintiff was 37 years old on his alleged disability onset date.  He attended school through eighth grade, and worked as a heavy equipment operator from 1988 through 2004.  (Tr. 25, 73, 78).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative lumbar disc disease at L5-S1; history of a burst l2 vertebral fracture (s/p posterior fusion from T12 to L30); history of a remote right knee injury; and a depressive disorder."  (Tr. 19).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a limited range of sedentary work:

> He can lift/carry up to 10 pounds frequently, 20 pounds occasionally; he can stand a total of two hours, walk a total of two hours, and sit a total of four hours in an eight-hour workday; use of a cane is necessary for walking long distances, going up steps, or on inclined surfaces; he can

2

> occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; he can never climb ladders/ropes/scaffolds.  Mentally, the claimant can perform simple repetitive work tasks and can tolerate routine stress in an object-oriented setting where contact with others is minimal.

(Tr. 22).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy, including such jobs as surveillance system monitor, ticket counter, and inspector.  (Tr. 26).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) relying on testimony of the vocational expert that was inconsistent with the Dictionary of Occupational Titles; 2) failing to give controlling weight to the opinion of Plaintiff's treating physician; and 3) affording great weight to the opinion of the reviewing state agency physician.  Upon close analysis, I conclude that neither of the asserted errors requires reversal or remand.

**II. Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

3

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

4

impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

1. *ALJ's Evaluation of the Opinion Evidence*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she erred in discounting the October 2010 opinion of Dr. Simons, Plaintiff's treating physician; and also erred in giving significant weight to Dr. Gupta, a consulting physician. Each assertion will be addressed in turn.

5

*Dr. Simons*

Dr. Simons treated Plaintiff for low back and left leg impairments beginning on September 14, 2005.[2] (Tr. 478). In October 2010, Dr. Simons completed a Physician's Report of Work Ability on behalf of the Ohio Bureau of Workers' Compensation, wherein he opined that Plaintiff had functional limitations consistent with sedentary work, but also indicates that Plaintiff can work no more than four hours in an eight-hour workday. (Tr. 660). The ALJ gave little weight to Dr. Simons' October 2010 assessment. (Tr. 24). In so concluding, the ALJ noted that Dr. Simons did not explain the medical rationale for his four-hour work limitation, nor did he send Plaintiff for any formal functional capacity assessment. The ALJ also noted that Dr. Simons relied heavily on Plaintiff's subjective complaints, as his treatment notes indicated that Plaintiff received significant reduction in his pain with prescribed medication. Notably, Plaintiff's pain level reportedly dropped to minimal levels after the implantation of a spinal cord simulator (SCS) in January 2010. Plaintiff argues, however, that as the treating physician Dr. Simon's October 2010 assessment was entitled deference.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541,

---

[2] In November 2004 Plaintiff slipped while jumping down from a bulldozer and suffered a lumbar strain/sprain. Thereafter, in April 2008 Plaintiff collided with another vehicle while riding a motorcycle and suffered a burst fracture of the L2 vertebral body and underwent posterior decompression and fusion surgery.

6

544 (6th Cir. 2004).  If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.  *Wilson*, 378 F.3d at 544; see also 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion."  20 C.F.R. § 404.1527(d)(2); but see *Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see also *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported.  *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his

7

conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence). Upon careful review, the undersigned finds that the ALJ properly weighed the opinion evidence in this matter.

In rejecting Dr. Simons' assessment, Plaintiff contends that the ALJ failed to comply with SSR 96-2p by failing to consider the various factors set forth in 20 C.F.R. 404.1527(d). Such is not the case. The ALJ's decision indicates that he considered Plaintiff's lengthy treatment history with Dr. Simons, as well as Dr. Simons' treatment notes and objective testing; all of which are factors to be considered pursuant to 20 C.F.R. 404.1527(d). (*See* Tr. 19, 23-24). The ALJ expressly states that generally more weight is given to the opinions of treating sources because they are likely to be most able to provide a detailed longitudinal picture of the claimant's impairments. (Tr. 24). The ALJ then explains that Dr. Simons' opinion that Plaintiff is limited to working only four hours of an 8-hour workday is given little weight because Dr. Simons did not provide any basis for this limitation, and such a limitation was inconsistent with Dr. Simons' treatment notes. Moreover, "there is no requirement . . . that an ALJ 'expressly' consider each of the factors [in 20 C.F.R. § 404.1527(d)(2)] within the written decision." *See Prince v. Astrue*, 2011 WL 1124986 (S.D. Ohio Mar. 25, 2011) (*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541(6th Cir. 2004)] does not require "an ALJ to explicitly analyze

each of [the factors in 20 C.F.R. § 404.1527(d)(2)] in a particular section of his or her decision, detailing the exact weight afforded to each factor").

Plaintiff also contends that the Dr. Simons treatment notes provide support for his four-hour workday limitation. Specifically, Dr. Simons' records indicate that Plaintiff continued to experience severe pain and discomfort which ultimately required him to undergo a Lumbar Transforaminal Epidural Injection on October 1, 2010. (Tr. 640). Records also reflect that after the implantation of the SCS, Plaintiff continued to complain of low back pain and left leg pain. (Tr. 641-642, 644-652). The records further document that Dr. Simon's clinical objecting testing revealed that Plaintiff had myofascial tenderness and banding in the lumbar paraspinal muscles, positive straight leg raising test on the left, sensory changes of the L4-L5 and L5-S1 dermatones on the left, that he walked with an antalgic gait which required the use of a cane, increased pain with flexion, extension and side bending of the lumbar spine, lumbar facet joint tenderness, and some sensory changes in the right lower extremity in the L5-S1 dermatone. (Tr. 641-642, 644-649). Thus, Plaintiff maintains that while the SCS did provide some relief to plaintiff, he continued to experience daily pain which disrupted his activities of daily living.

However, as noted by the Commissioner, such records merely confirm the ALJ's conclusion that had severe impairments; the records do not establish any function limitations nor explain why Plaintiff would be limited to working only four hours a day. Notably, it is well-established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of*

9

*Health & Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). More importantly, Dr. Simons offers no evidence for such limitation and merely checks off the available limitation boxes. (Tr. 660). See *Deaton v. Astrue*, 2011 WL 4062993 (S.D. Ohio July 7, 2011) [3] (physician "did not provide any detailed objective findings to support his opinion" where he "simply checked lines indicating that [the claimant's] ability to perform certain work-related activities with regularity was markedly limited").

Furthermore, Dr. Simons' four-hour workday restriction was internally inconsistent with his other determination that Plaintiff could sit for 6-12 hours and sit/stand for 4-6 hours. *See Render v. Sec'y of Health & Human Servs.*, 1989 WL 34104, *3 (6th Cir. Apr.3, 1989) (proper to discount treating physician's opinion which was internally inconsistent). *See also Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir.1987) (ALJ is not bound by the disability opinion of a treating physician who provides conflicting opinions throughout the relevant time period). In light of the foregoing, the undersigned finds that the ALJ reasonably discounted Dr. Simons' opinion that Plaintiff is limited to working only four hours a day.

*Dr. Gupta*

Dr. Gupta performed a consultative examination of Plaintiff in July 2009. (Tr. 508-19). Upon examination, Dr. Gupta opined that Plaintiff could lift/carry up to 10 pounds frequently, 20 pounds occasionally, and could stand a total of two hours, walk a total of two hours, and sit a total of four hours in an eight-hour workday. (Tr. ). Based

---

[3] Report and recommendation adopted, 1:10-CV-00461, 2011 WL 4064028 (J. Spiegel) (S.D. Ohio Sept. 13, 2011).

10

on Plaintiff's gait, Dr. Gupta found that the use of cane was necessary for walking long distances, going up steps, or on inclined surfaces. Dr. Gupta further determined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. The ALJ gave significant weight to the majority of Dr. Gupta's functional limitations as they were consistent with the evidence of record. (Tr. 24).

Plaintiff argues, however, that the ALJ erred in relying on Dr. Gupta's assessment because he did not get the opportunity to review any of the medical evidence which was submitted to the file after the date of his evaluation on July 18, 2009. Plaintiff's argument is misplaced.

As noted by the Commissioner, Plaintiff appears to have confused Dr. Gupta's role with that of a state agency records reviewing physician. Rather, Dr. Gupta's was asked to examine Plaintiff, describe his observations, provide objective findings, and possibly proffer an assessment of Plaintiff' limitations. Thus, to the extent Plaintiff is contending that Dr. Gupta's evaluation cannot be given significant weight merely because he had not reviewed Plaintiff's medical records, he is mistaken: as this Court has determined that "there is no requirement, however, that a non-treating source's opinion must be based on a complete or more detailed record to constitute substantial evidence." *Seider v. Astrue*, No. 1:11-cv-153 (S.D. Ohio Feb. 28, 2012) (citing *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997 (6th Cir. 2011).

Furthermore, other than asserting the Dr. Gutpa did not review the entire record, Plaintiff fails to assert that Dr. Gutpa's findings are inaccurate or otherwise develop this

11

argument in any meaningful way. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted*); Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir.2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal...."). Accordingly, Plaintiff's argument should be overruled in this regard.

### 2. Vocational Errors

Plaintiff also challenges the ALJ's reliance on the testimony of the vocational expert. Specifically, Plaintiff asserts that the ALJ erred in finding that there were significant jobs in the national and regional economy. At the administrative hearing, in response to a hypothetical question detailing a person with Plaintiff's vocational profile and RFC, the vocational expert testified that such a person would be able to perform such jobs as surveillance system monitor, ticket counter and inspector. (Tr. 706-08).

Plaintiff argues, however, that the DOT description of surveillance system monitor and ticket checker each require a reasoning level of three, a higher level of reasoning than that required for low stress repetitive work.[4] Because the VE's testimony

---

[4] The DOT assigns each job a General Educational Development score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dep't of Labor, Dictionary of Occupational Titles, App'x C(III), 1991 WL 688702 (G.P.O.) (4th ed., rev'd 1991). The GED scale is composed of three divisions-reasoning development, mathematical development, and language development. *Id.* Reasoning Development Level 3 jobs require an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Heffelfinger v. Astrue*, 1:10CV2892, 2012 WL 1004722 (N.D. Ohio Mar. 23, 2012) (citing Dep't of Labor, Dictionary of Occupational Titles, App'x C(III), 1991 WL 688702 (G.P.O.) (4th ed., rev'd 1991)).

12

was inconsistent with the job description listed in the DOT, Plaintiff asserts that the ALJ's reliance on the VE testimony is not supported by substantial evidence. The Sixth Circuit has held, however, that an ALJ may rely on VE testimony even if there is an apparent conflict between the VE's testimony and the DOT. See *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

Notably, the ALJ has a duty under Social Security Ruling 00–4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency." SSR 00–4p. Where, the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE. See *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir.2009). The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *Id.*; *See also* SSR 00–4p ("If the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

Here, the vocational expert expressly testified that a hypothetical person with Plaintiff's physical and mental limitations would be able to perform the jobs of surveillance system monitor, ticket counter and inspector. (Tr. 706-09). The ALJ inquired, "Your testimony is consistent with the DOT?" The VE responded, "Yes." (Tr. 709). Plaintiff's counsel did not question the VE about any apparent inconsistencies between the testimony and the DOT relating to reasoning levels, nor did counsel bring

13

any potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert and the ALJ had no affirmative duty under SSR 00–4p to conduct her own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley*, 560 F.3d at 606 (citing *Martin v. Commissioner of Social Security*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")). Because the ALJ specifically asked the VE if her testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform. *Id.*

Furthermore, the "D.O.T. lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00–4p (emphasis added). In other words, the reasoning levels listed in the DOT reflect the maximum requirements for the sedentary jobs listed by the VE, and not the range of specific requirements an individual must satisfy to perform the jobs. See *Hall v. Chater*, 109 F.3d 1255, 1259 (5th Cir. 1997) (not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the D.O.T."); *see also French v. Astrue*, No. 2:08–cv–15, 2009 WL 151525, at *8 (E.D. Ky. Jan. 20, 2009) ("the DOT defaults to the highest physical demand level required by the job"). Social Security Ruling 00–4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00–4p. Thus, the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs

14

identified at step five of the sequential evaluation process despite the DOT's listing of reasoning level three for such jobs.

Last, Plaintiff asserts that the DOT is outdated as to all three jobs the ALJ determined that Plaintiff could perform. (*See* Doc. 6 at 5, citing *Cunningham v. Commissioner*, 360 F. App'x 606, 615–16 (6th Cir. 2010). Plaintiff, however, has not produced any evidence to show that such job descriptions in the DOT are obsolete so as to render the VE's testimony on this matter unreliable. *Payne-Hoppe v. Comm'r of Soc. Sec.*, 1:11-CV-0097, 2012 WL 395472 (S.D. Ohio Feb. 7, 2012) report and recommendation adopted, 1:11-CV-97, 2012 WL 709274 (S.D. Ohio Mar. 5, 2012) (citing *Cunningham,* 360 F. App'x at 615 ("While the Social Security Commissioner does take administrative notice of this document when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted.")). Thus, Plaintiff's claimed error with respect to the ALJ's reliance on the DOT is not well-taken.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONALD CREECH,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:12-cv-161

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).